UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**MAX RAY BUTLER** : DOCKET NO. 2:17-cv-230
    **B.O.P. # 09954011**

**VERSUS** : JUDGE MINALDI

**S. PORTER ET AL.** : MAGISTRATE JUDGE KAY

### REPORT AND RECOMMENDATION

Before the court is a civil rights complaint filed *in forma pauperis* by *pro se* plaintiff Max Ray Butler ("Butler"), an inmate in the custody of the Federal Bureau of Prisons ("BOP").[1] He is currently incarcerated at the Federal Correctional Institute in Adelanto, California ("FCIA"). However, he complains about events that occurred during his incarceration at the Federal Correctional Institute in Oakdale, Louisiana ("FCIO").

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court. For the following reasons it is recommended that all claims, save the one alleging retaliation, be **DISMISSED WITH PREJUDICE**.

### I.
#### BACKGROUND

Butler claims that he was in wrongfully placed in FCIO's administrative segregation in the Special Housing Unit ("SHU"). He states that he was in general population at FCIO from June 26,

---

[1] This matter arises under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 91 S.Ct. 1999 (1971). *Bivens* authorizes civil rights suits filed against federal agents or employees for a violation of a constitutional right.

- 1 -

2014, to April 25, 2016, and "never presented any disciplinary or security problems to prison officials" during that time. Doc. 1, p. 4. He claims that he was placed in administrative segregation in the SHU on April 25, 2016, for the purpose of "investigation." *Id.* He contends that his SHU placement was not in response to a prison disciplinary infraction and that there was a lack of proper paperwork. *Id.* He complains that BOP Program Statements were not followed in regard to his SHU placement, including that he never received an incident report on the matter. *Id.* at 4–8, 13, 18. He contends that a backdated administrative detention order was manufactured after he filed an administrative grievance. *Id.* at 4–5.

Butler states that he filed several grievances regarding the alleged violations of his due process rights, beginning on May 12, 2016. *Id.* at 10, 15, 17, 18; *see* doc. 1, att. 1, pp. 1–4. In one such grievance, he states, "On April 25th (2016) SIS Lt. Porter told me that over that past weekend she received anonymous copouts threatening me. I told her . . . that I am not threatened yet she put me in SHU under 'investigation' anyway." Doc. 1, att. 1, p. 1. Butler contends that his continued placement in SHU was an act of retaliation against him for filing grievances. Doc. 1, p. 10. He also claims that the SHU staff retaliated against him for filing the present matter by increasing his criminal history score with the intent of reclassifying him to medium custody [doc. 24, p. 1] and by targeting him for cell searches [doc. 22, att. 1, p. 1].

Butler claims that he was denied access to the courts as the SHU staff threw away his commissary submissions and he was not able to buy paper and stamps for legal mail. Doc. 7; Doc. 22, att. 1, p. 1. He also maintains that SHU staff delayed his mail by at least a week. Doc. 16, p. 1. He claims that these actions were retaliatory. Doc. 7.

Butler complains about the conditions of confinement in SHU. He alleges that there is a disparity between the SHU commissary and that of general population, namely that some items

available to general population are not available in the SHU commissary. Doc. 21, p. 1. He also states that SHU officers speak to SHU inmates disrespectfully, fail to wash inmates' jumpsuits until late in the day, bring the telephone out too late in afternoon for everyone to use it, and subject inmates to cold showers. Doc. 22, att. 1, p. 1. In addition, he states that SHU inmates are only allowed one hour per day to exercise outside, spend twenty-three hours a day in their cell and eat all meals there, and have restricted access to the telephone, visitation, mail, personal property, clothing, and educational, religious, and recreational programs. Doc. 1, p. 6. He also complains of the lack of natural light or fresh air in his cell. *Id.*

Butler was transferred from FCIO to FCIA on or about April 28, 2017. Doc. 23. He claims that FCIO officials are continuing their retaliation against him as they called FCIA and that they have continued to act to prevent him from being released from SHU at FCIA. Doc. 28; doc 28, att. 1. At the time he filed his supplement to the instant complaint, dated June 27, 2017, and received by this court on July 3, 2017, he alleged that he had been held in SHU continuously for 428 days. Doc. 28.

Butler claims that the prolonged segregation (at FCIO and FCIA) has adversely impacted his mental and physical health. He states that in November 2016, the stress of the SHU confinement caused him to have chest pains and sleeping problems, for which he was put on waiting lists for cardiology and neurology consults. Doc. 1, pp. 6, 16. He contends that he has lost a total of forty-six pounds during his combined SHU confinement. Doc. 28. He also states that the extended confinement has caused a delay in his participation in the Residential Drug Abuse Treatment Program ("RDAP"), thereby extending his total term of imprisonment. Doc. 28, att. 1.

As relief in regard to his SHU confinement at FCIO, Butler asked: (1) to be released from SHU; (2) for punitive damages in the amount of $50,000; and (3) for nominal damages in the

amount of $200.00 per day for each day that he was held in SHU. Doc. 1, p. 26. He also asks the court to order his release from FCIA's SHU. Doc. 28.

## II.
## LAW & ANALYSIS

### A. Frivolity Review

Butler has been granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. Doc. 10. Under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii), a district court is directed to dismiss an action if the court determines that the action is frivolous, malicious, or fails to state a claim on which relief may be granted. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v. Wyatt*, 157 F.3d 1016, 1019 (5th Cir. 1998) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). A complaint fails to state a claim upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). In determining whether a complaint is frivolous or fails to state a claim upon which relief may be granted, the court must accept the plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995) (frivolity); *Bradley*, 157 F.3d at 1025 (failure to state a claim).

### B. Due Process Claim—SHU Detention/Detainment

Butler alleges that his detention in SHU violated his due process rights.

Ordinarily an inmate has no recognized due process interest in his custodial classification. *Moody v. Baker*, 857 F.2d 256, 257–58 (5th Cir. 1988). In *Sandin v. Conner*, the Supreme Court held that a prisoner's liberty interest is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, . . . nonetheless imposes atypical and significant hardship on the

inmate in relation to the ordinary incidents of prison life." 115 S. Ct. 2293, 2300 (1995) (internal citations omitted).

Solitary confinement is typically viewed as an ordinary, expected, and permissible incident of prison life. *See Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996). However, it may be used in a way that "imposes atypical and significant hardship." *Hernandez v. Velasquez*, 522 F.3d 556, 562–63 (5th Cir. 2008) (quoting *Sandin*, 115 S. Ct. at 2300); *see also Wilkerson v. Goodwin*, 774 F.3d 845, 855–57 (5th Cir. 2014). "[S]everity of the restrictive conditions and their duration [are] key factors" in determining whether an inmate has a liberty interest in his custodial classification. *Wilkerson*, 774 F.3d at 854–55.

There is no question that Butler's daily activities were limited in FCIO's SHU. However, it is noted that he completed multiple courses while in SHU [doc. 1, p. 21], that he had use of a telephone for approximately fifteen minutes per week [*id.* at 22], and that he had the opportunity to exercise outside for an hour day [*id.* at 6]. His other complaints simply do not impose atypical and significant hardships relative to the ordinary incidents of prison life.

Additionally, the duration of confinement must also be considered. In this regard, the court in stated:

> The Fifth Circuit recently suggested that two and a half years of segregation is a threshold of sorts for atypicality, *Wilkerson*, 774 F.3d at 855, such that 18–19 months of segregation under even the most isolated of conditions may not implicate a liberty interest. *See also Hernandez*, 522 F.3d at 563 (lockdown in "a shared cell for twelve months with permission to leave only for showers, medical appointments, and family visits" not an atypical or significant hardship).

*Bailey v. Fisher*, 647 Fed. App'x 472, 476–77 (5th Cir. 2016) (footnote omitted). Considering that Butler was in segregation at FCIO for no more than one year, and that this time still falls well under eighteen months even adding the administrative segregation at FCIA, it appears that such

duration is not sufficiently atypical to trigger a due process interest and his claims in this regard should be dismissed.

### C. *Due Process Claim—Failure to Follow BOP Program Statement*

Butler alleges that he was denied due process because FCIO officers did not comply with BOP Program Statement 5270.11 (28 C.F.R. 541.5), in that he did not receive an incident report relative to his SHU placement nor was there any objective evidence articulated on the administrative detention order in support of his detention. Doc. 1, pp. 4–5, 7–9. He also complains that he was not present for each thirty day SHU review. Doc. 1, p. 18. He provided approximately thirty-six pages of the special housing unit reviews relative to his continued housing in SHU. Doc. 20, att. 1, pp. 1–36.

For Butler to state a valid *Bivens* claim, the act or omission he alleges must rise to the level of a constitutional violation. *See Siegert v. Gilley*, 111 S.Ct. 1789 (1991). Fifth Circuit case law is clear "that a prison official's failure to follow the prison's own policies, procedures, or regulations does not rise to a level of constitutional violation if constitutional minima are nevertheless met." *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996); *Taylor v. Howards*, 268 F.3d 1063 (5th Cir. 2001). Here, as shown above, Butler had no constitutionally protected liberty interest in avoiding assignment to the SHU. Thus, the defendants' alleged failure follow their internal policies/program statements did not give rise to a constitutional violation, because there was no underlying liberty interest to violate and therefore no constitutional right to due process. Butler's claims in this regard should be dismissed.

### D. *Retaliation*

Butler claims that his continued detention in the SHU was in retaliation for his filing of administrative grievances and the current law suit.

Officials may not retaliate against an inmate "for complaining through proper channels." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006). In order to prevail on a claim for retaliation, an inmate must demonstrate: (1) a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for exercising that right; (3) a retaliatory adverse act; and (4) causation. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998). An inmate's personal belief that he is the victim of retaliation is insufficient. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). Rather, the inmate must present direct evidence of a motivation or "allege a chronology of events from which retaliation may plausibly be inferred." *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir. 1988)). In order to establish causation, the inmate must demonstrate that but for the retaliatory motive, the incident complained of would not have occurred. *Id.*

In this matter Butler sets forth sufficient allegations under each element required for a retaliation claim. Accordingly, this claim survives initial review. Butler will be ordered to amend his complaint and identify the defendants responsible under this claim alone, and the court will then order service on those defendants.

### E. Access to the Courts Claim

Butler argues that he was denied access to the courts as his commissary submissions were discarded and he was not able to purchase adequate postage for legal mailings. Doc. 7, p. 1.

"It is clearly established that prisoners have a constitutionally protected right of access to the courts." *Brewer v. Wilkinson*, 3 F.3d 816, 820 (5th Cir. 1993). This right "assures that no person will be denied the opportunity to present to the judiciary allegations concerning violations of fundamental constitutional rights." *Lewis v. Casey*, 116 S.Ct. 2174, 2194 (1996) (quoting *Wolff v. McDonnell*, 94 S.Ct. 2963, 2986) (Thomas, J., concurring). Claims alleging violations of the right

of access to courts are not cognizable unless the inmate's position as a litigant was actually prejudiced by the denial of access. *See Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999); *Lockamy v. Dunbar*, 399 Fed. App'x 953, 955 (5th Cir. 2010). Butler has not shown that his ability to prepare and transmit legal documents was inhibited nor has he alleged any other actual injury. In fact, he has filed several supplements to the present suit. He also filed at least two other lawsuits subsequent to filing the present matter. *See Butler v. Johnson*, No. 2:17-cv-394 (W.D. La.); *Butler v. Johnson*, 2:17-cv-559 (W.D. La.). He has not shown that he has, in any way, been hindered in his efforts to purse legal claims. His access to courts claims should be dismissed.

### F. *Residential Drug Abuse Treatment Program*

Butler contends that his continued confinement in SHU has caused a delay in his participation in the Residential Drug Abuse Treatment Program, resulting in him serving more time in prison. Doc. 28, att. 1.

Butler's claims presuppose that he has a constitutional right to participate in rehabilitation programs. However, neither the Due Process Clause, nor any other provision of the Constitution, affords prisoners the constitutional right to educational or rehabilitative services or programs. Simply put, prisoners do not have a constitutional right to participate in drug treatment programs. *See Moody v. Doggett*, 97 S. Ct. 274, 289 n. 9 (1976) (prisoner classification and eligibility for rehabilitation programs are not subject to due process protections). As Butler does not have a protected liberty interest in participating in the RDAP, alleged consequences of a delay in attending such program fail to state a claim for which relief may be granted.

### G. *Injunctive Relief*

Butler seeks injunctive relief for alleged actions that occurred when he was incarcerated at FCIO. However, he has been transferred from FCIO's custody since the filing of his complaint.


The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991). Any suggestion of the possibility of transfer back to FCIO is too speculative to warrant relief. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001). Furthermore, this court does not have jurisdiction to order Butler's release from the SHU at FCIA. Butler should address such claims for relief with the appropriate parties in his current place of incarceration.

### III.
#### CONCLUSION

While a *pro se* litigant should ordinarily be given an opportunity to amend his complaint before it is dismissed, leave to amend is not required if the petitioner has already pleaded his "best case." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (quoting *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998)). In this matter, under all claims but the one for retaliation, it is clear that Butler simply cannot state a claim under applicable law and that leave to amend will not cure the deficiencies in his allegations. Therefore, for reasons stated,

**IT IS RECOMMENDED** that all claims, with the exception of the retaliation claim, be **DENIED AND DISMISSED WITH PREJUDICE** as frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C. § 1915(e)(2)(B)(i) and (ii).

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days**

**following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers this 1st day of August, 2017.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE