## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAKE CHARLES DIVISION

MAX RAY BUTLER                    :          DOCKET NO. 2:17-cv-0230
   REG. # 09954-011


VERSUS                           :          UNASSIGNED DISTRICT JUDGE


S. PORTER, ET AL.                :          MAGISTRATE JUDGE KAY


## REPORT AND RECOMMENDATION

Before the court is a Motion to Dismiss [doc. 56] filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by all remaining defendants in this suit. The matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

## I.
### BACKGROUND

The motion to dismiss relates to a pro se civil rights suit filed in this court under *Bivens v. Six Unknown Named Agents*, 91 S.Ct. 1999 (1971), by plaintiff Max Ray Butler. Doc. 1. Butler is an inmate in the custody of the Bureau of Prisons ("BOP") and was incarcerated at the Federal Correctional Institute at Oakdale, Louisiana ("FCIO") when the complained-of events occurred. *Id.* After initial review and the filing of multiple amended complaints, Butler's sole surviving claim is that he was confined in the Special Housing Unit ("SHU") in retaliation for filing administrative grievances and the current lawsuit. Docs. 1, 36; *see* docs. 30, 42, 51. In his original complaint, filed on February 3, 2017, Butler alleged that he had been in SHU since April 25, 2016, and that the reasons he was given for this placement included a threat against him and an ongoing investigation. Doc. 1. He also listed the multiple grievances he had filed while in SHU and alleged

-1-

that he had been continued in SHU without the required review. *Id.* He has since been transferred to another federal facility and released from SHU, though he complains that the new facility is more dangerous and that he avoids filing any administrative grievances out of fear of further retaliation. Doc. 64, pp. 8–9.

The defendants now move to dismiss the suit, asserting that Butler's retaliation claim is not cognizable under *Bivens.* Doc. 56, att. 1. They also maintain that, even if a *Bivens* remedy is implied, all federal defendants are entitled to qualified immunity. Doc. 60. Butler opposes the motion and the defendants have filed a reply. Docs. 64, 68.

## II.
### LAW & ANALYSIS

#### A. *Rule 12(b)(6) Standard*

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows for dismissal of a claim when a plaintiff "fail[s] to state a claim upon which relief can be granted." When reviewing such a motion, the court should focus exclusively on the complaint and its attachments. *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012). Such motions are also reviewed with the court "accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010). However, "the plaintiff must plead enough facts 'to state a claim to relief that is plausible on its face.'" *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1974 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor will a complaint suffice if it tends naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (cleaned up). Instead, the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009). Accordingly, the court's task in evaluating a

motion to dismiss under Rule 12(b)(6) is "not to evaluate the plaintiff's likelihood of success," but instead to determine whether the claim is both legally cognizable and plausible. *Billups v. Credit Bureau of Greater Shreveport*, 2014 WL 4700254, *2 (W.D. La. Sep. 22, 2014) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

### B. Application

The Civil Rights Act of 1871 created a broad right of action for damages against state officials for "deprivation of **any** rights, privileges, or immunities secured by the Constitution . . . ." 42 U.S.C. § 1983 (emphasis added); *see Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (2017). However, it did not create an analogous remedy for constitutional violations by federal officials and no such right of action existed until the Supreme Court's decision in *Bivens*, supra, exactly one hundred years later. *Abbasi*, 137 S.Ct. at 1854. There the Court enforced a damages remedy to compensate persons injured by federal officials who violated the Fourth Amendment prohibition against unreasonable searches and seizures. *Bivens*, 91 S.Ct. at 2004–05. The Court then extended the remedy authorized under *Bivens* twice more, to a violation of the Fifth Amendment's Due Process guarantee based on an employment discrimination claim and a violation of the Eighth Amendment's ban on cruel and unusual punishment based on a federal jailer's failure to treat a prisoner's asthma. *See Davis v. Passman*, 99 S.Ct. 2264 (1979); *Carlson v. Green*, 100 S.Ct. 1468 (1980). As the Court recently noted, "[t]hese three cases . . . represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Abbasi*, 137 S.Ct. at 1855. In the decades since, the Court has made

> [a] notable change in [its] approach to recognizing implied causes of action, [and] made clear that expanding the *Bivens* remedy is now a "disfavored" judicial activity. *Iqbal*, 556 U.S., at 675, 129 S.Ct. 1937. This is in accord with the Court's observation that it has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001). Indeed, the Court has refused to do so for the past 30 years.

*Id.* at 1857; *see also Corr. Svcs. Corp. v. Malesko*, 122 S.Ct. 515, 524 (2001) (Scalia, J., concurring) ("*Bivens* is a relic of the heady days in which this Court assumed common-law powers to create causes of action—decreeing them to be 'implied' by the mere existence of a statutory or constitutional prohibition. . . . [W]e have abandoned that power to invent 'implications' in the statutory field [and there] is even greater reason to abandon it in the constitutional field . . . .")[1]

In *Butts v. Martin*, the Fifth Circuit reviewed, in relevant part, the district court's decision on a prisoner's *Bivens* claims based on retaliation and violation of the Free Exercise Clause of the First Amendment. The court acknowledged that it had previously held that "a *Bivens* action is analogous to an action under § 1983—the only difference being that § 1983 applies to constitutional violations by state, rather than federal, officials." *Butts*, 877 F.3d 571, 588 (5th Cir. 2017) (quoting *Evans v. Ball*, 168 F.3d 856, 863 n. 10 (5th Cir. 1999)). It also recognized that it "[had] largely permitted *Bivens* claims against prison officials alleging retaliation for exercising a constitutional right without addressing whether a *Bivens* remedy is available for such claims." *Id.* at 589. It noted, however, that the Supreme Court had not recognized a *Bivens* remedy for First

---

[1] In this regard, the Court distinguishes recognizing implied causes of actions under § 1983 from recognizing them under the Constitution itself through *Bivens*:

> When Congress enacts a statute, there are specific procedures and times for considering its terms and the proper means for its enforcement. It is logical, then, to assume that Congress will be explicit if it intends to create a private cause of action. With respect to the Constitution, however, there is no single, specific congressional action to consider and interpret.
>
> Even so, it is a significant step under separation-of-powers principles for a court to determine that it has the authority, under the judicial power, to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation. When determining whether traditional equitable powers suffice to give necessary constitutional protection—or whether, in addition, a damages remedy is necessary—there are a number of economic and governmental concerns to consider. Claims against federal officials often create substantial costs, in the form of defense and indemnification. Congress, then, has a substantial responsibility to determine whether, and the extent to which, monetary and other liabilities should be imposed upon individual officers and employees of the Federal Government. In addition, the time and administrative costs attendant upon intrusions resulting from the discovery and trial process are significant factors to be considered.

*Abbasi*, 137 S. Ct. at 1856.

Amendment violations like the ones presented there and had recently expressed strong skepticism under *Abbasi* against the creation of new causes of action under *Bivens*. *Id.* at 587–89.

The Fifth Circuit then instructed the district court to determine whether a *Bivens* remedy was available under Butts's free exercise and retaliation claims, using the following test:

> In order to determine whether a *Bivens* remedy is available, courts must first assess whether Butts's claim presents a new *Bivens* context. *See Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937 (quoting *Malesko*, 534 U.S. at 68, 122 S.Ct. 515). If so, there are two circumstances where *Bivens* does not recognize an implied cause of action for constitutional violations. First, *Bivens* claims are unavailable "if there are 'special factors counselling hesitation in the absence of affirmative action by Congress.'" *Abbasi*, 137 S.Ct. at 1857 (quoting *Carlson*, 446 U.S. at 18, 100 S.Ct. 1468); *see also Zuspann v. Brown*, 60 F.3d 1156, 1160 (5th Cir. 1995) (quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999). Second, *Bivens* remedies may be foreclosed by congressional action where an "alternative, existing process for protecting the interest amounts to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Wilkie v. Robbins*, 551 U.S. 537, 550, 127 S.Ct. 2588, 168 L.Ed.2d 389 (2007).

*Id.* at 587–88. The case was remanded to the United States District Court for the Eastern District of Texas, where a Motion to Dismiss is currently pending. *See Butts v. Martin*, No. 1:12-cv-114 (E.D. Tex.).

Accordingly, we now apply the test outlined by the Fifth Circuit to determine whether a *Bivens* remedy is available for Butler's retaliation claim.

A claim presents a new *Bivens* context if it differs "in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 137 S.Ct. at 1859. The retaliation claim presents a new *Bivens* context under the limits recognized by the Supreme Court because it involves a different constitutional right – the First Amendment – than the ones approved for *Bivens* remedies under the Court's prior decisions.[2] *See Reichle v. Howard*, 132 S.Ct. 2088, 2093 n. 4

---

[2] Butler argues that he has raised Due Process and Eighth Amendment violations. Doc. 64, p. 10. To the extent that he is discussing claims already dismissed, these have no bearing on the issue before us. To the extent that he argues that his sole remaining claim, based on retaliation for filing administrative grievances, arises under these constitutional provisions rather than the First Amendment, he is incorrect. *See, e.g.*, *Butts*, 877 F.3d at 588–89.

(2012) ("We have never held that *Bivens* extends to First Amendment claims."); *see also Andrews v. Miner*, 301 F.Supp.3d 1128, 1133–34 (N.D. Ala. 2017) (noting that Court has at times assumed that a First Amendment *Bivens* action exists, but has never actually decided the matter or otherwise discussed the propriety of the remedy).

The defendants argue that this court should decline to extend a *Bivens* remedy to Butler's retaliation claim, on the basis that (1) special factors counsel hesitation in such an expansion and (2) alternative, existing processes preclude the *Bivens* remedy. Under the first prong, defendants point to the general concerns outlined in *Abbasi*, supra, on judicially-created remedies. Doc. 56, att. 1, p. 18. Specifically, they argue that extension of *Bivens* in this context would violate Congress's intent, create increased costs on the Bureau of Prisons, and have a harmful effect on institutional security and federal officers' discharge of their duties.[3] *Id.* at 21–26.

As the Court observed in *Abbasi*, the threshold for this first factor is low: a special factor must only "cause a court to hesitate" in order to weigh against implying a new *Bivens* remedy. 137 S.Ct. at 1858. Any such factors are reviewed in the aggregate. *Id.* at 1857–58, 1860–63. We note the recent distillation of the concerns involved in extending *Bivens* to a prisoner's retaliation claim by the Northern District of Alabama in *Andrews*, supra. The court pointed out there that such an extension "could lead to the unwanted result of inmates filing grievances against correctional officers and then claiming that any use of force [or, in this case, disciplinary segregation] by the officers resulted from retaliatory animus." *Andrews*, supra, 301 F.Supp.3d at 1135. It further observed:

> Any increase in suits by inmates necessarily involves increased litigation costs to the Government and burdens on the individual employees who must defend such claims. First Amendment retaliation claims, requiring inquiry into a defendant's subjective state of mind, often would present genuine

---

[3] They also argue the existence of an alternative remedy. Doc 56, att. 1, pp. 19–20. We reserve that factor for the second prong of the test outlined in *Butts*, and address it only if we do not find the government's other arguments under the first prong persuasive.

-6-

issues of material fact not easily resolved on summary judgment. This, in turn, would necessitate trials and further increase litigation costs.

*Id.* As the defendants point out, extension of the remedy would therefore not only increase costs of defending against such claims but could also unduly limit officers in their use of disciplinary segregation as a security measure at the prisons. Though the court is aware of the potential hardships of disciplinary segregation and the ways in which inmates might be retaliated against for filing legitimate grievances, concerns of institutional security in particular counsel more than mere hesitation.

Butler maintains that such special factors are insufficient in his case because he challenges individual instances of overreach by federal employees that do not implicate the national security or executive policy considerations cited in *Abbasi*, a case involving alien detainees held on immigration violations in the wake of the September 11, 2001 terrorist attacks. Doc. 64, p. 14. As the Court pointed out in *Abbasi*, however, "legislative action suggesting that Congress does not want a damages remedy is itself a factor counseling hesitation." 137 S.Ct. at 1865. Accordingly, Congress's efforts to limit prisoner suits through the Prison Litigation Reform Act of 1995, and failure therein to provide a standalone remedy against federal jailers, likewise weighs against the extension of *Bivens* in his case. *See Badley v. Granger*, 2018 WL 3022653, at *4 (S.D. Ind. Jun. 18, 2018) (rejecting extension of *Bivens* to prisoner's retaliation claim under *Abbasi*, based in part on Congress's history of attempting to curb prisoner suits); *Reid v. United States*, 2018 WL 1588264, at *3 (E.D. Cal. Apr. 2, 2018) (same).

The above special factors are sufficient to dictate hesitation in extending *Bivens* to Butler's retaliation claim. Furthermore, we have not located a single case post-*Abbasi* in which a court has determined that *Bivens* should be extended to First Amendment retaliation claims against BOP employees. On that basis we decline to extend the remedy here and do not address whether an "alternative, existing process for protecting the interest amounts to a convincing reason for the

Judicial Branch to refrain from providing a new and freestanding remedy in damages." *Butts*, supra, 877 F.3d at 587–88 (quoting *Wilkie v. Robbins*, 127 S.Ct. 2588 (2007)). Butler's complaint must therefore be dismissed for failure to state a claim on which relief can be granted.

### III.
#### CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the Motion to Dismiss [doc. 56] be **GRANTED** and that this case be **DISMISSED WITH PREJUDICE** under Federal Rule of Civil Procedure 12(b)(6).

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 10th day of September, 2018.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE